# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA**, <br><br> Plaintiff, <br><br> v. <br><br> **SHANE BRITTON**, <br><br> Defendant. | Case No. 3:18-cr-121-SI <br><br> **OPINION AND ORDER** |

Billy J. Williams, United States Attorney, Jennifer J. Martin and Natalie K. Wight, Assistant United States Attorneys, UNITED STATES ATTORNEY'S OFFICE, 1000 S.W. Third Ave. Suite 600, Portland, Oregon 97204-2902. Of Attorneys for Plaintiff.

Robert Hamilton, Assistant Federal Public Defender, 101 S.W. Main Street, Suite 1700, Portland, Oregon 97204. Of Attorney for Defendant.

**Michael H. Simon, District Judge.**

A federal jury convicted Defendant Shane Britton of one count of abusive sexual contact in violation of 18 U.S.C. § 2244(b). Defendant now moves for a new trial under Federal Rule of Criminal Procedure 33. ECF 70. For the reasons that follow, the motion for a new trial is DENIED.

The court may vacate the verdict and grant a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33(a). The court's power to grant a motion for new trial is much

PAGE 1 – OPINION AND ORDER

broader than its power to grant a motion for judgment of acquittal. *United States v. Kellington*, 217 F.3d 1084, 1097 (9th Cir. 2000). Defendant makes several arguments in support of his motion, but they do not singularly or cumulatively warrant the granting of a new trial.[1]

Defendant argues that the jury was exposed to inflammatory and prejudicial testimony when two witnesses testified that they believed that the victim had been raped. Ms. Conner, the victim's aunt, testified that she had asked her niece if she had been raped. TR 63. Ms. Conner, however, also testified that her niece's answer was "no." TR 66. Ms. Cortez, the victim's friend, also used the word "rape," but explained that her own personal definition of the word "rape" included more than unwanted sex and also encompassed unwanted touching. TR 83. Because Ms. Conner clarified that her niece had told her that she had not been raped, and Ms. Cortez clarified that her own definition of rape included unwanted touching, the jury was not left with the false impression that the victim had been raped. Defendant did not object to Ms. Conner's or Ms. Cortez's testimony on the grounds that it was inflammatory or prejudicial, nor did he ask for a curative instruction to the jury. Because neither witness testified that they believed that the victim had been raped, under the commonly understood and legal definition of the word "rape," the actual trial testimony was neither inflammatory nor unduly prejudicial and did not deprive Defendant of a fair trial.

Defendant also assigns error to the testimony of expert witness Dr. Gail Goodman. Before trial, Defendant objected to the admission of Dr. Goodman's testimony, and the Court offered Defendant a continuance of the trial date in order to secure his own expert witness.

---

[1] In his opening brief, Defendant argued that the Court's failure to strike two jurors for cause deprived him of a fair trial. Defendant used his peremptory challenges to excuse both jurors whom he claims should have been struck for cause. Neither was seated on Defendant's jury. In his reply, Defendant conceded this argument based on *United States v. Martinez-Salazar*, 528 U.S. 304 (2000).

Defendant declined the Court's offer of a continuance. He now argues that Dr. Goodman's testimony amounted to unlawful vouching testimony and was unduly prejudicial.

Dr. Goodman testified about the various behaviors and reactions exhibited by victims of child sexual abuse. She did not comment on the facts of the case or the credibility of the specific victim in this case, whom she did not examine. Instead, she testified about general behavioral characteristics of child sex abuse victims based on her professional experience as a research psychologist. That is proper expert opinion. *See United States v. Bighead*, 128 F.3d 1329, 1330 (9th Cir. 1997) (holding that it was not improper to permit expert testimony, that "consisted of her observations of typical characteristics drawn from many years experience interviewing many, many persons, interviewed because they were purported victims of child abuse").

Additionally, Dr. Goodman's use of the term "child sexual abuse" was not unduly prejudicial. Dr. Goodman explained that the term "child" is typically defined as anyone below the age of consent in a jurisdiction. TR 187. Although the victim in this case was seventeen and thus over the age of consent under federal law, she was younger than the age of consent in many jurisdictions (including Oregon) and thus was within the age demographic for many of the studies of child sexual abuse that Dr. Goodman discussed. *Id.* Dr. Goodman's testimony did not give the jury the impression that the victim in this case was underage and unable to consent to sexual touching. Furthermore, the Court explicitly instructed the jury that the victim in this case was over the age of consent. TR 231, *see also* ECF 60 (Jury Instruction No. 19).

Finally, Defendant objects to several aspects of the government's closing and rebuttal arguments. He argues that by characterizing the defense theory as "you need to blame [the victim] at the age of 17 for not having the wherewithal to say 'Oh, no, don't do that,'" the government improperly denigrated the defense by characterizing the defense as blaming the

victim and deprived Defendant of the benefits of the reasonable doubt standard. TR 260. The defense theory was that Defendant lacked knowledge that the victim did not consent. The defense theory was that because "she doesn't say no [and s]he doesn't tell him to leave," Defendant did not know that his touching was nonconsensual. TR 248 (Defendant's closing argument). During closing argument, Defense counsel repeatedly emphasized all of the things that the victim did not do to communicate her lack of consent. TR 247-49. Implicit in the defense theory of the case is that the victim *should* have spoken up and that any unwanted touching that occurred was, at least in part, her own fault. The government's argument that the defense theory involved blaming the victim was not improper and did not deny Defendant the benefit of the reasonable doubt standard. Instead, it was an accurate characterization of the defense theory in this case.

Defendant next argues that the government essentially sought a strict liability standard: Because Defendant entered the victim's bedroom, therefore he must be guilty. But an examination of the evidence and argument make clear that the government never advanced or urged a strict liability theory. The focus of the trial and the government's closing argument was not on Defendant's presence in the victim's bedroom, but on the unwanted sexual contact between Defendant and the victim. TR 238. The prosecutor emphasized the fact that Defendant entered the victim's bedroom without her permission, alongside all of the other acts that Defendant undertook without the victim's permission, as further evidence that he similarly did not have, or did not care whether he had, permission to initiate sexual contact with the victim. TR 235-38. Prosecutors have latitude in how they fashion a closing argument, and "[i]nherent in this latitude is the freedom to argue reasonable inferences based on the evidence." *United States v. Molina*, 934 F.2d 1440, 1445 (9th Cir. 1991).

Defendant also objects to a statement made by the government during its rebuttal argument that the jury should "[h]old [Defendant] accountable for his conduct. Hold him accountable for the decisions that he made, knowing that [the victim] did not want him to touch her. Find him guilty." TR 261. Defendant did not object to these statements at the time. He now argues that this statement improperly demanded that the jury find Defendant guilty, rather than weigh the evidence. Prosecutors may "tell the jury that it is its duty to convict if it concludes that the defendant is guilty beyond a reasonable doubt." *United States v. Gomez*, 725 F.3d 1121, 1131 (9th Cir. 2013). Prosecutors cannot, however, "state that the duty of the jury is to find the defendant guilty." *United States v. Sanchez*, 176 F.3d 1214, 1224 (9th Cir. 1999). Courts have recognized that "[t]here is perhaps a fine line between a proper and an improper 'do your duty' argument." *Id.* The prosecutor's statement to the jury to hold Defendant accountable "for the decisions that he made knowing that [the victim] did not want him to touch her" falls on the permissive side of this border. The prosecutor did not ask the jury to hold Defendant accountable for anything other than his actions and his knowledge. On the other hand, the prosecutor failed to include a reminder that the jury should find Defendant guilty only if it concludes that the evidence demonstrates beyond a reasonable doubt that he did commit the crime charged.

Even if the government's the statement were improper, which it was not, "we do not think [it] so poisoned the well as to require a new trial." *United States v. Castro-Davis*, 612 F.3d 53, 68 (1st Cir. 2010). The jury received instructions on the reasonable doubt standard, and the Court instructed the jury that its job was to "weigh and evaluate all of the evidence received in this case and in that process to decide the facts." TR 222-24. The jurors were each given a copy of the instructions to take with them into deliberations. "[A]ny potentially harmful effect from

the prosecutor's closing was safeguarded by the . . . final jury instructions." *Castro-Davis*, 612 F.3d at 68.

## CONCLUSION

Defendant's Amended Motion for a New Trial (ECF 70) is DENIED. Defendant's Motion for a New Trial (ECF 69) is DENIED as moot.

**IT IS SO ORDERED**.

DATED this 5th day of December, 2018.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge